UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-mj-8091-WM

UNITED STATES of AMERICA

V.

PATRICK JAMES DIMAURO,

Defendant.
_____/

FILED BY____SW____D.C.

Feb 19, 2025

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - WPB

## CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek M. Maynard)? NO

2. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to October 3, 2019 (Mag. Judge Jared M. Strauss)? NO

3. Did this matter involve the participation of or consultation with now Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023? NO

4. Did this matter involve the participation of or consultation with now Magistrate Judge Marta Fulgueira Elfenbein during her tenure at the U.S. Attorney's Office, which concluded on March 5, 2024? NO

Respectfully submitted,

HAYDEN P. O'BYRNE
UNITED STATES ATTORNEY

By: _____
Brian D. Ralston
Assistant United States Attorney
Court ID No.: A5502727
500 S. Australian Avenue, Suite 400
West Palm Beach, Florida 33401
Telephone: (561) 820-8711
Email: Brian.Ralston@usdoj.gov

AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| United States of America | ) |
| v. | ) |
| | ) Case No. 25-mj-8091-WM |
| PATRICK JAMES DIMAURO | ) |
| | ) |
| Defendant(s) | ) |

FILED BY ___SW___ D.C.
Feb 19, 2025
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - WPB

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __November 20, 2025__ in the county of __Palm Beach__ in the __Southern__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 USC 841(a)(1),(b)(1)(B)(vi) | Possession with the Intent Distribute (Fentanyl). |

This criminal complaint is based on these facts:
See Attached Affidavit

☑ Continued on the attached sheet.

_____
Complainant's signature

Special Agent Michael Terreri II, DEA
*Printed name and title*

Sworn to and attested to me by applicant by telephone (Facetime) per the requirements of Fed. R. Crim. P.4 (d) and 4.1.

Date: February 19, 2025

_____
Judge's signature

City and state: West Palm Beach, FL

William Matthewman, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT

I, Michael Terreri, being duly sworn, depose and state as follows:

## AGENT BACKGROUND AND PURPOSE OF AFFIDAVIT

1. I am a Special Agent of the Drug Enforcement Administration (DEA) have been so employed since March of 2024. As such, I am an investigative law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516(1). I have received training on the subject of narcotics trafficking and money laundering from the DEA. This training has included the possession, manufacture, distribution, transportation and importation of controlled substances, as well as methods used to finance drug transactions and launder drug proceeds.

2. As a Special Agent with the DEA, I have been instructed in investigative techniques concerning the unlawful distribution of illegal narcotics, possession with intent to distribute controlled substances, importation of illegal narcotics, use of communication facilities to conduct illegal narcotics transactions, maintaining places for purposes of manufacturing, distributing or using controlled substances and conspiracies to commit these offenses, in violation of Title 21, United States Code Sections 841(a)(1), 843(b), 856, 846, 952, and 963, respectively. Based upon this experience, and through the experience of other agents with numerous years of experience, I have also become well versed in the methodology utilized in illegal narcotics trafficking, the specific type of language used by illegal narcotics traffickers, and the unique patterns employed by narcotics organizations. I have also participated in surveillances, and electronic surveillances. As a result of my law enforcement training, and the experience of other agents I have worked with in dealing with drug traffickers, I have found that they rarely speak openly about their illegal narcotics transactions. Instead, they use coded language to disguise their conversations about illegal narcotics transactions

1

and also communicate via Telegram and text messages.

3. This affidavit is submitted in support of a criminal complaint charging Patrick DIMAURO with Distribution of a Controlled Substance, counterfeit pressed Oxycodone pills containing fentanyl, in violation of Title 21, United States Code, Section 841(a)(1). The information contained in this affidavit is based on information provided to me from other law enforcement officers and agents, a review of law enforcement reports, and my own personal knowledge. This affidavit is submitted for the limited purpose of establishing probable cause. It does not purport to describe everything known to me concerning the investigation.

## PROBABLE CAUSE

4. In or about September 2024, the Palm Beach County Sheriff's Office (PBSO) and the DEA West Palm Beach District Office (WPBDO) began a joint investigation into the drug trafficking activities of Patrick DIMAURO. Information from a law enforcement source indicated that DIMAURO was selling counterfeit pressed Oxycodone pills containing fentanyl in the Southeast Florida area. A PBSO Undercover (UC) Agent then met with and began purchasing counterfeit pressed pills that appeared to be legitimate Oxycodone 30mg pills that were later lab tested and confirmed to contain fentanyl from Patrick DIMAURO and his associates. These pills will be herein referred to as "counterfeit pressed pills containing fentanyl."

### Controlled Purchase of Counterfeit Pressed Pills Containing Fentanyl on November 22, 2024

5. Between November 20 and 21, 2024, the UC contacted DIMAURO via text on the Telegram Application, a secure messaging application, to inquire if DIMAURO had 100 counterfeit pressed pills containing fentanyl available to purchase the following day. During this communication DIMAURO made plans with the UC to conduct the deal on Friday, November 22, 2024. The UC agreed to pay DIMAURO $1,000 for 100 counterfeit pressed pills containing fentanyl.

6. On November 22, 2024, at approximately 10:00 a.m., the UC contacted DIMAURO

2

via Telegram App to confirm the meeting location would be the Lantana Road Branch Library (Lantana Library), located at 4020 Lantana Road, Lake Worth, FL 33462. At approximately 10:40 a.m., a male driving a white Honda arrived at the 3941 Tuskegee Drive, Atlantis, Florida. At approximately 10:53 a.m. the UC arrived at the Lantana Library and received a message from DIMAURO that stated that DIMAURO would send a friend to complete the drug transaction. The friend was later identified by law enforcement as the male who had arrived at the house in the white Honda. The friend will be herein referred to by his initials "RJC."

7. At approximately 10:54 a.m., RJC was observed departing the 3941 Tuskegee Drive. RJC drove directly from the 3941 Tuskegee Drive to the Lantana Library where RJC met with the UC. At approximately 10:57 a.m., RJC parked next to the UC vehicle, exited the front passenger side of RJC's vehicle and entered the front passenger side of the UC vehicle. Inside the vehicle, RJC provided 100 counterfeit pressed pills containing fentanyl and the UC provided RJC with $1,000 in DEA official advanced funds. At approximately 10:59 a.m., the transaction concluded and RJC reentered his vehicle and departed the Lantana Library. Following the transaction agents followed RJC to a convenience store where he was observed entering the store. From there agents followed RJC to a nearby shopping center where RJC did not contact any other individuals, and then ultimately returned to the 3941 Tuskegee Drive.

8. This UC purchase was audio and video recorded. The DEA Southeast Laboratory later performed a chemical analysis of the pills purchased during the operation and verified that they contained fentanyl. The net weight of the pills was approximately 11.42 grams.

**Controlled Purchase of Counterfeit Pressed Pills Containing Fentanyl on December 18, 2024**

9. On December 17, 2024, the UC contacted DIMAURO via text on the Telegram Application, a secure messaging application, to inquire if DIMAURO had 100 counterfeit pressed pills containing fentanyl available to purchase the following day. DIMAURO told the UC that

3

DIMAURO had the pills available and could meet the next day. The UC agreed to pay DIMAURO $1,000 for 100 counterfeit pressed pills containing fentanyl.

10. On December 18, 2024, at approximately 2:00 p.m., the UC contacted DIMAURO via Telegram App to confirm the meeting location would be the Lantana Library. At approximately 3:01 p.m., the UC arrived at the Lantana Library and received a message from DIMAURO that stated that DIMAURO would send a friend (the friend was later identified by law enforcement and will be herein referred to by his initials as IKJ). At approximately 3:15 p.m., IKJ was observed arriving at the 3941 Tuskegee Drive. A female, believed to live with DIMAURO, was then observed exiting the 3941 Tuskegee Drive and entering the vehicle driven by IKJ. IKJ then drove directly from the 3941 Tuskegee Drive to the Lantana Library where IKJ met with the UC. At approximately 3:18 p.m., IKJ parked next to the UC vehicle, exited the front passenger side of IKJ's vehicle and entered the front passenger side of the UC vehicle. Inside the vehicle, IKJ provided 100 counterfeit pressed pills containing fentanyl to the UC and the UC provided IKJ the $1,000 in DEA official advanced funds. At approximately 3:18 p.m., the transaction concluded and IKJ reentered his vehicle and departed the Lantana Library. Surveillance agents observed IKJ drive directly back to the 3941 Tuskegee Drive and the female exited IKJ's vehicle and enter the 3941 Tuskegee Drive.

11. This UC purchase was audio and video recorded. The DEA Southeast Laboratory later performed a chemical analysis of the pills purchased during the operation and verified that they contained fentanyl. The net weight of the pills was approximately 10.68 grams.

**Controlled Purchase of Counterfeit Pressed Pills Containing Fentanyl on January 22, 2025**

12. On January 21, 2025, the UC contacted DIMAURO via text on the Telegram Application, a secure messaging application, to inquire if DIMAURO had 500 counterfeit pressed pills containing fentanyl available to purchase the following day. DIMAURO told the UC that DIMAURO had the pills available and could meet the next day. The UC agreed to pay DIMAURO

4

$2,000 for 500 counterfeit pressed pills containing fentanyl.

13. On January 22, 2025, at approximately 3:30 p.m., the UC contacted DIMAURO via Telegram App to confirm the meeting location would once again be the Lantana Library. At approximately 4:23 p.m., the UC arrived at the Lantana Library. A short time later, DIMAURO was observed exiting the 3941 Tuskegee Drive and entering DIMAURO's vehicle. Agents observed DIMAURO as he drove directly from the 3941 Tuskegee Drive to the Lantana Library. At approximately 4:25 p.m., DIMAURO parked next to the UC vehicle, exited the front driver side of DIMAURO's vehicle and walked up to the driver's side window of the UC vehicle. DIMAURO provided 500 counterfeit pressed pills containing fentanyl to the UC through the window and the UC provided $2,000 in DEA official advanced funds to DIMAURO. At approximately 4:26 p.m., the transaction concluded and DIMAURO reentered his vehicle and departed the Lantana Library. Surveillance agents observed DIMAURO drive directly back to the 3941 Tuskegee Drive and enter the 3941 Tuskegee Drive.

14. This UC purchase was audio and video recorded. The DEA Southeast Laboratory later performed a chemical analysis of the pills purchased during the operation and verified that they contained fentanyl. The net weight of the pills was approximately 52.73 grams.

**Controlled Purchase of Counterfeit Pressed Pills Containing Fentanyl on January 30, 2025**

15. On January 30, 2025, the UC contacted DIMAURO via text on the Telegram Application, a secure messaging application, to inquire if DIMAURO had 500 counterfeit pressed pills containing fentanyl available to purchase the following day. DIMAURO told the UC that DIMAURO had the pills available and could meet tomorrow later that day. The UC agreed to pay DIMAURO $2,000 for 500 counterfeit pressed pills containing fentanyl.

16. At approximately 12:29 p.m., the UC pulled into the Lantana Library. At approximately 12:35 p.m., DIMAURO was observed departing the 3941 Tuskegee Drive.

DIMAURO drove directly from the 3941 Tuskegee Drive to the Lantana Library where DIMAURO met with the UC. At approximately 12:36 p.m., DIMAURO parked next to the UC vehicle, exited the front driver side of DIMAURO's vehicle and walked up to the driver's side window of the UC vehicle. DIMAURO provided 500 counterfeit pressed pills containing fentanyl to the UC through the window and the UC provided $2,000 in DEA official advanced funds to DIMAURO. At approximately 12:37 p.m., the transaction concluded and DIMAURO reentered his vehicle and departed the Lantana Library. Surveillance agents observed DIMAURO drive directly back to the 3941 Tuskegee Drive and enter the 3941 Tuskegee Drive.

17. This UC purchase was audio and video recorded. The DEA Southeast Laboratory later performed a chemical analysis of the pills purchased during the operation and verified that they contained fentanyl. The net weight of the pills was approximately 46.44 grams.

## Conclusion

18.     Therefore, based on the facts and information set forth in this affidavit, I respectfully submit that there is probable cause to believe that on November 22, 2024, December 18, 2024, January 22, 2025 and January 30, 2025, Patrick DIMAURO committed the criminal offense of Distribution of a Controlled Substance, fentanyl, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(B)(vi).

FURTHER YOUR AFFIANT SAITH NAUGHT.

MICHAEL TERRERI II
SPECIAL AGENT
DRUG ENFORCEMENT ADMINISTRATION

Sworn and attested to me telephonically (via facetime)
by the applicant in accordance with the requirements of
Fed. R. Crim. P. 4.1 on this 19th day of February
2025.

HON. WILLIAM MATTHEWMAN
UNITED STATES MAGISTRATE JUDGE

7

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name:** Patrick Dimauro

**Case No:**

Count#: 1
Possession with Intent to Distribute a Controlled Substance (fentanyl)

21 U.S.C. §§ 841(a)(1), (b)(1)(B)(vii)

* **Max. Term of Imprisonment:** 40 years
* **Mandatory Min. Term of Imprisonment (if applicable):** 5 years
* **Max. Supervised Release:** 4 years to life
* **Max. Fine:** $5,000,000
* **Special Assessment:** $100

*Refers only to possible term of incarceration, supervised release and fines. It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.